Walter McALESTER, Plaintiff–Appellee,

v.

UNITED AIR LINES, INC., a Delaware Corporation, Defendant–Appellant.

Nos. 86–1088, 86–1130.

United States Court of Appeals, Tenth Circuit.

July 14, 1988.

Irvin M. Kent, Aurora, Colo. (John Mosby, Denver, Colo., with him on the briefs), Aurora, Colo., for plaintiff-appellee.

Robert P. Casey, Chicago, Ill. (P. Kathleen Lower of Morris & Lower, Denver, Colo., with him on the briefs), for defendant-appellant.

Before McKAY, TACHA and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Defendant United Air Lines, Inc., appeals from a jury verdict granting damages to plaintiff Walter McAlester in a racially discriminatory discharge claim under 42 U.S.C. § 1981. United also appeals the district court's order reinstating McAlester to his employment with United.

United asserts the district court lacked subject matter jurisdiction over McAlester's § 1981 claim because the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188, gives adjustment boards exclusive jurisdiction over disputes arising under a collective bargaining agreement, 45 U.S.C. § 153, First (i).

In the alternative, United asserts the district court erred: (1) by denying its motion for judgment notwithstanding the verdict because McAlester failed to prove intentional race discrimination; (2) by denying its motion for new trial because the jury's verdict was against the manifest weight of evidence; (3) by admitting statistical evi-

dence; and, (4) by excluding the written grievance and arbitration decisions upholding McAlester's discharge.

We hold, for the reasons stated in this opinion, that the RLA does not preclude a federal court's jurisdiction over a § 1981 claim of racial discrimination. We AFFIRM the district court on the other issues.

### I. Jurisdiction

We are called upon to determine whether an airline employee's § 1981 claim of racial discrimination is barred by the RLA. The Supreme Court has not expressed a view on this issue. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 456–57 n. 3, 95 S.Ct. 1716, 1718 n. 3, 44 L.Ed.2d 295 (1975).

Section 1981[1] was adopted as § 1 of the Civil Rights Act of 1866, 14 Stat. 27, and then reenacted by the Civil Rights Act of 1870, 16 Stat. 144. It was adopted pursuant to authority granted under the Thirteenth Amendment. It relates primarily to racial discrimination in the making and enforcing of contracts. *Johnson*, 421 U.S. at 459, 95 S.Ct. at 1719.

The RLA was enacted in 1926 to promote stability in labor-management relations by providing effective and efficient remedies for resolution of railroad employee disputes concerning "rates of pay, rules, or work conditions arising under collective bargaining agreements." 45 U.S.C. § 153, First (i). The Act was extended to airlines in 1936. 45 U.S.C. § 181. The RLA provides a comprehensive framework for resolution of "major" and "minor" disputes in the railroad and airline industries. "Minor disputes" are controversies over the meaning of an existing collective bargaining agreement in a particular fact situation generally involving one employee. They may be contrasted with "major disputes" which re-

sult when there is disagreement in the bargaining process for a new contract. *See Elgin, Joliet & Eastern Ry. Co. v. Burley*, 325 U.S. 711, 722–24, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945); *United Transp. Union (C) and (T) v. Union Pac. R.R. Co.*, 812 F.2d 630, 632 (10th Cir.1987). Minor disputes are subject to internal grievance process and if not settled, are submitted to an adjustment board. Judicial review of these boards' determinations has been characterized as "among the narrowest known to the law," *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978), reh. denied 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1979), being limited to review for the board's failure to comply with the RLA, for a decision beyond the board's jurisdiction or fraud, 45 U.S.C. § 153, First (q).

United asserts for the first time, on appeal, that the Railway Labor Act precludes the district court's subject matter jurisdiction over McAlester's § 1981 claim. The general rule is that subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the court at any point in the proceeding. *E.g., American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 16–19, 71 S.Ct. 534, 541–43, 95 L.Ed. 702 (1951); *Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed.R.Civ.P. 12(h)(3).

United asserts McAlester's § 1981 claim that he was disciplined less favorably than whites, arose under his union contract.[2] Therefore, the RLA's jurisdiction over contractual issues bars *de novo* judicial review. United cites in support *Evans v. Central of Ga. R.R. Co.*, 619 F.Supp. 1364 (N.D.Ga.1985). The district court in *Evans* held where the source of plaintiff's § 1981 claim is the collective bargaining agreement, *de novo* judicial review is barred. McAlester asserts *Evans* is wrongly decid-

---

**1.** 42 U.S.C. § 1981 states:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,

penalties, taxes, licenses, and exactions of every kind, and to no other.

**2.** United's collective bargaining agreement states in Article I, D.: "There shall be no discrimination between employees covered by this Agreement because of age, sex, race, creed, color or national origin."

ed because the RLA does not require a plaintiff alleging racial discrimination to exhaust his contractual remedies before bringing a civil rights action.

In *Evans,* a black railroad employee brought actions for discriminatory treatment based on race, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and § 1 of the 1866 Civil Rights Act, 42 U.S.C. § 1981. The district court allowed the Title VII claim to proceed but dismissed the § 1981 claim stating the RLA vests exclusive jurisdiction with the adjustment boards to hear "minor" disputes through its grievance procedure. The district court reasoned that 42 U.S.C. § 1981 relates primarily to racial discrimination in the making and enforcing of contracts. *Id.* at 1366. The RLA grants exclusive jurisdiction to an adjustment board to determine "minor disputes" which relate to the meaning or proper application of a particular provision of a collective bargaining agreement to one or more individuals. The district court determined plaintiff's § 1981 claim was a "minor dispute" because plaintiff asserted that the disciplinary and work provisions of his collective bargaining agreements were applied by the defendant in a discriminatory manner. *Id.* at 1368.

We decline to follow *Evans* for the following reasons. First, *Evans* can be distinguished on the basis of the allegations in the complaint. In *Evans,* the court found the gravamen of plaintiff's § 1981 claims was that the disciplinary provisions of his collective bargaining agreement were applied by the defendants in a discriminatory manner. *Id.* at 1368. McAlester does not allege that his claim of racial discrimination is based upon violation of the collective bargaining agreement. Rather, McAlester asserts the disparate disciplinary actions of United violate 42 U.S.C. § 1981. Under the RLA, while the courts have no jurisdiction to hear airline employee claims based solely upon the contract, the courts do have jurisdiction over claims based upon federal statutes. *Stevens v. Braniff Airways, Inc.,* 490 F.Supp. 231 (D.Minn.1980) (contract claim dismissed for lack of jurisdiction under RLA, but sex discrimination claim under 42 U.S.C. § 2000e allowed to proceed).

Second, the RLA does not repeal or preempt claims under § 1981. The RLA contains no language which could be remotely construed as directly repealing § 1981. If the RLA does repeal § 1981, this repeal can be found only by implication. It is a cardinal rule that repeal by implication is not favored. *Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974); *City and County of Denver v. Bergland,* 695 F.2d 465, 475 (10th Cir.1982). In determining whether such a finding is proper, the court is guided by the following principles:

> There are two well-settled categories of repeals by implication—(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest.

*Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936); *Bartlett v. United States,* 166 F.2d 920, 926 (10th Cir.1948).

In order for preemption to occur, the differences between the RLA and § 1981 must be "irreconcilable." Moreover, it is not enough that some similarity of subject matter can be found. The later act must cover the "whole subject matter" so that it is "clearly intended as a substitute." United has cited no case which finds either of these tests met in the present context, and the court's research has likewise revealed none. In fact, the RLA contains a provision that "[n]othing in this [Act] shall be construed to require an individual employee to render labor or service without his consent." 45 U.S.C. § 159, Eighth. The legislative history of the RLA indicates that this subsection was included to clarify that the RLA did not abridge any of the protections of employee rights under the Thirteenth Amendment. Senate Subcommittee on Labor of the Committee on Labor and Public Welfare, 93d Cong., 2d Sess., Legislative

History of the Railway Labor Act, As Amended, 286–88 and 332 (Comm.Print 1974).

Based upon a review of the legislative history, the court cannot conclude that these statutes are irreconcilable or that the RLA covers the subject matter of racial discrimination in contracting or was clearly intended as a substitute for § 1981. In *Colorado Anti–Discrimination Comm'n v. Continental Airlines, Inc.*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963), the Supreme Court concluded that Congress in passing the RLA did not intend to bar states from protecting employees against racial discrimination. No provision in the Act even mentions discrimination. *Id.* at 724, 83 S.Ct. at 1027. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Mancari*, 417 U.S. at 551, 94 S.Ct. at 2483. Both the RLA and § 1981 are capable of co-existence. Certainly no inconsistency results from permitting both contractual rights and statutory rights to be enforced in their respectively appropriate forums.

Third, the source of McAlester's claim of racial discrimination is the statutory authority of § 1981, not the provisions of his collective bargaining agreement. In submitting his grievance to arbitration, McAlester seeks to vindicate his contractual right under the collective bargaining agreement.[3] By contrast, in filing a lawsuit under § 1981, McAlester asserts an independent statutory right accorded by Congress.

It is true that the RLA remedy for the resolution of minor disputes is "in at least some situations" exclusive. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). In *Andrews*, an employee brought a *state* wrongful-discharge claim based squarely on an alleged breach of the collective bargaining agreement. The Court held that Congress had intended the RLA dispute resolution to be mandatory for that type of dispute, and that courts were therefore foreclosed from addressing *state* claims that properly arise under the RLA.

Nevertheless, this policy does not apply necessarily to independent rights or claims derived from *federal* statutory schemes[4] such as the Federal Employers' Liability Act, *Atchison, Topeka, and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (RLA does not preclude tort recovery under FELA); the Civil Rights Act of 1871, 42 U.S.C. § 1983, *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (arbitration does not bar judicial proceeding to protect federal statutory and constitutional rights that § 1983 is designed to safeguard); the Fair Labor Standards Act, 29 U.S.C. §§ 201–19, *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (rights under Fair Labor Standards Act are independent of collective bargaining agreement); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e–17, *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (collective bargaining requirement of mandatory and binding arbitration does not bar Title VII action for discrimination). The Supreme Court has considered the effect of arbitral decisions on claims brought under all but the Civil Rights Act of 1866, 42 U.S.C. § 1981. In each case, the Supreme Court held that the arbitral decision did not

---

**3.** McAlester contested his termination through the four-step grievance process and arbitration provided by the collective bargaining agreement.

**4.** Several lower courts have determined the RLA does not bar a court's jurisdiction over a claim arising under a federal statute. See *Norman v. Missouri Pac. R.R.*, 414 F.2d 73 (8th Cir.1969) (race discrimination under Title VII, 42 U.S.C. § 2000e); *Hodges v. Tomberlin*, 510 F.Supp. 1280 (S.D.Ga.1980) (claim under 42 U.S.C. § 1983); *Stevens*, 490 F.Supp. 231 (sex discrimination claim under Title VII); *Johnson v. American Airlines, Inc.*, 487 F.Supp. 1343 (N.D.Tex. 1980) (age discrimination claim under 29 U.S.C. § 623); *Kidder v. Eastern Air Lines, Inc.*, 469 F.Supp. 1060 (S.D.Fla.1978) (claim under Veteran's Reemployment Rights Act, 38 U.S.C. § 2021).

preclude an independent cause of action under the applicable federal statute. Therefore, we believe the RLA does not preclude an independent cause of action under § 1981.

Although there is a split of authority,[5] we believe an action under § 1981 sounds in tort rather than contract. *Person v. St. Louis–San Francisco Ry. Co.*, 428 F.Supp. 1148, 1149 (W.D.Okla.1976); *Ingram v. Steven Robert Corp.*, 547 F.2d 1260, 1263 (5th Cir.1977); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 275 (4th Cir.), *cert. denied* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed. 2d 286 (1976); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6th Cir.1973); *Buckner v. Goodyear Tire and Rubber Co.*, 476 F.2d 1287 (5th Cir.1973). In a § 1981 action, the plaintiff's right and the defendant's duty do not arise from an express promise made by either party or from a promise implied by law because of a benefit received or a detriment suffered. The § 1981 action is founded on a statute which has as its object not the enforcement of contractual obligations but the recognition of a social right of equality of opportunity of persons regardless of race. *Ware v. Colonial Provision Co.*, 458 F.Supp. 1193, 1195 (D.Mass.1978).

Because a plaintiff's § 1981 action sounds in tort and is based upon a federal statutory rather than contractual duty, McAlester's claim cannot be a "minor dispute" subject to the exclusivity provisions of the RLA. In *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), the Supreme Court concluded that the RLA's statutory power over the making of contracts on wages, hours and working conditions does not include the authority to make discriminations based on race; therefore the Act does not preclude the court's jurisdiction. *Id.* at 203–07, 65 S.Ct. at 232–34. In *Steele*, a black locomotive fireman brought a discrimination action against the union because it negotiated away black firemen's right to advance to the position of engineer to the benefit of white firemen. The Court

concluded that Steele's claims arose under the Constitution and were not determinable under the administrative scheme of the RLA. *Id.* at 204–05, 65 S.Ct. at 232–33. *See also Brotherhood of R.R. Trainmen v. Howard*, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 645 F.2d 1365, 1375 (10th Cir.1981).

■ Fourth, in fashioning a substantive body of law under § 1981, the court should, in an effort to avoid substantive law conflicts, look to the principles of law created under Title VII for direction. *Patterson*, 535 F.2d at 270 (quoting *Waters v. Wisconsin Steel Works of Int'l Harvester Co.*, 502 F.2d 1309, 1316 (7th Cir.1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976)); *See Johnson*, 421 U.S. at 459–60, 95 S.Ct. at 1719–20 (remedies under Title VII are co-extensive with § 1981 and the two procedures augment each other). In *Norman v. Missouri Pac. R.R.*, 414 F.2d 73 (8th Cir.1969), the court held that the RLA does not preempt court jurisdiction over racial discrimination claims asserted under Title VII of the Civil Rights Act of 1964. The court reasoned that if the Supreme Court gave effect to a state anti-discrimination statute as in *Colorado Anti–Discrimination Comm'n v. Continental Airlines, Inc.*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84, it would likely give effect to a federal statute barring racial discrimination. We find persuasive the Eighth Circuit's reasoning in *Norman* that the RLA does not preclude the court's *de novo* review of a Title VII claim of racial discrimination. We have applied this same reasoning to determine that the RLA does not likewise preempt the court's jurisdiction over a § 1981 claim of racial discrimination. *See also, Alexander*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (collective bargaining agreement containing mandatory arbitration provision does not bar Title VII claim).

We conclude that the RLA does not preclude the court's subject matter jurisdiction

---

5. The Eighth Circuit considers actions under § 1981 as sounding in contract for determination of the applicable statute of limitation. *Al-*

*len v. Amalgamated Transit Union Local 788*, 554 F.2d 876, 880 (8th Cir.), cert. denied 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977).

over an independent cause of action under the federal statute, 42 U.S.C. § 1981. McAlester's claim based upon the federal statute does not arise out of the terms of his collective bargaining agreement but rather from the duties imposed by § 1981. The district court properly exercised jurisdiction over McAlester's claim. We believe the right to judicial enforcement of the constitutional right to be free from discrimination should not be lightly relinquished to arbitration.

## II. Alleged Trial Errors

United asserts the district court erred in admitting McAlester's statistical evidence, and in excluding the written grievance and arbitration decisions upholding McAlester's termination. United also asserts the district court erred in denying United's motion for judgment n.o.v. because McAlester failed to prove intentional racial discrimination, and erred in denying its motion for new trial because the jury's verdict was against the manifest weight of evidence.

### Facts

McAlester worked at United as a ramp serviceman for sixteen and one-half years. He was summoned to jury duty for a one-week period commencing March 1, 1982, and prepared his time card for the entire week prior to leaving for jury duty. McAlester was excused from jury duty on March 4 and 5, 1982. He did not report for work on either of those days.

When McAlester returned to work, he reported to his supervisor, Cooper. McAlester then checked with payroll to determine whether his time card had been signed. Cooper asked McAlester if he had reported for jury duty on all five days, because his jury validation form was improperly completed. McAlester stated he had reported for all five days. Cooper then called the court because of the irregularities in the jury validation form. The court informed Cooper that McAlester had only served on jury duty three days. When Cooper confronted McAlester, McAlester stated he had been sick on March 4 and 5 and did not attend jury duty.

Pursuant to grievance procedures, Cooper set up a shift investigation at which he explained the discrepancies to the operating manager. McAlester gave no excuse for his behavior but stated he would accept work without pay for the two-day period. In addition to stating he was sick, McAlester also told the shift investigation that he had been excused from jury duty on March 4 and 5. Following the investigation, McAlester was charged with "attempting to collect pay under false pretenses for [his] absences on March 4 and 5, 1982" and "providing false information to a supervisor concerning reason for the absence."

McAlester's grievance then went to a formal investigation hearing before the operations manager of the ramp services, Day. McAlester presented a letter from the jury commission stating McAlester had served all five days. This letter was later repudiated. Day reviewed the hearing information with the Chicago industrial relations representative, Richards, for consistency with other United disciplinary decisions. Day decided to terminate McAlester. McAlester appealed this decision to the industrial relations representative, Richards. Richards upheld the termination. Following Richards' decision, McAlester's case proceeded to arbitration, where his termination was upheld. The issue of race discrimination was not presented at any level of the grievance or arbitration process. McAlester then filed a claim with the Equal Employment Opportunity Commission which found no racial discrimination and issued a "right to sue letter." McAlester did not pursue his claim of racial discrimination under Title VII, 42 U.S.C. § 2000e.

McAlester then filed his present complaint in federal district court alleging deprivation of rights under 42 U.S.C. § 1981, asserting that United failed to apply its system of progressive discipline to him, because white employees involved in similar situations were not disciplined as severely. McAlester sought reinstatement with back pay.

In support of his claim, McAlester presented testimony of specific instances of

individual discrimination. McAlester was aware of other white employees who violated similar rules for which they could be terminated but were not. He contends minorities and white employees were disciplined differently because minorities were terminated on their first offense. Both a white and Hispanic employee were charged with obtaining pay under false pretenses because they had claimed eight hours pay when they were both several minutes late. The Hispanic employee was terminated, and the white employee was given three days leave without pay. Two white employees were charged with falsely claiming leave and furnishing false information. In both instances the white employees were not terminated, although their offenses were similar to that committed by McAlester.

McAlester also presented testimony of an expert witness on statistics. United's objection to this evidence based on Fed.R. Evid. 403 was overruled. The expert compared the percentage of minorities terminated with the percentage of minorities in the work force at United's Denver facility for the years of 1977 through 1981. Of the sixty-three terminations in this five-year period, twenty-four percent of those terminations were blacks, although blacks comprised only six percent of the work force. The expert also compared the percentage of minorities terminated with their percentage in the work force for the ramp service for the years 1980 through 1982. During this two-year period there were eight terminations, six of which were black employees. Black employees made up 6.7 percent of the work force and seventy-five percent of the discharges. The expert stated the chance of this happening is one in 440,000.

At the close of the plaintiff's case, United moved for directed verdict, alleging McAlester had not met his burden of a prima facie case or shown that the legit-

imate nondiscriminatory reason for termination because of a rule violation was a pretext. The court denied this motion.

### Statistical Evidence

 United asserts the district court erred in admitting the expert's statistical analysis of the termination of minorities for both United's Denver facility and the ramp service. United contends that exclusion of this evidence was proper under both Fed.R.Evid. 401 and 403 [6] on the following grounds: (1) admission of the statistics is more prejudicial than probative; (2) statistics alone cannot establish a prima facie case of intentional racial discrimination; (3) statistics alone cannot establish an employer's nondiscriminatory reason for the termination is pretext; (4) only statistics related to the ramp service unit should have been considered rather than statistics for the whole Denver facility; (5) the sample size for the ramp service unit is too small for the statistics to be reliable; and (6) the expert's failure to consider factors other than race caused the statistics to be unreliable. We will deal with these issues in sequence.

Challenges under Rule 403 call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. The task of balancing the probative value of evidence against the danger of confusion of the issues is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited. *Rigby v. Beech Aircraft Co.*, 548 F.2d 288, 293 (10th Cir.1977). Absent abuse of discretion by the trial court, the determination of the balance to be struck in these matters will not be disturbed on appeal. *Higgins v. Martin Marietta Corp.*, 752 F.2d 492 (10th Cir.1985). United's objection to the statistical evidence goes to its weight, not its admissibility. United was

---

**6.** Fed.R.Evid. 401 states:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 403 reads as follows:

Although relevant, evidence may be excluded if probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

allowed to develop each of its asserted flaws through cross-examination. Additionally, the court instructed the jury that "statistics are inherently slippery in nature, are not irrefutable, and, like any other kind of evidence, they may be rebutted." We think the trial judge did not abuse his discretion in allowing the expert to testify on his statistical comparison of the percentage of minorities terminated with their percentage in the work force of United's Denver facility and the ramp service unit.

Contrary to United's contentions, statistics alone may be used to establish a prima facie case of racial discrimination in a disparate treatment case. *Hazelwood School Dist. v. United States,* 433 U.S. 299, 307–08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977); *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977); *Weahkee v. Norton,* 621 F.2d 1080, 1083 (10th Cir.1980). The Supreme Court has also held that statistics may be used to prove that the employer's racially neutral reason for termination is purely pretext. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed. 2d 668 (1973); *Anderson v. City of Albuquerque,* 690 F.2d 796, 802 (10th Cir.1982). Even if United's contentions were true, McAlester's case does not rest solely on statistics but also rests upon individual instances of discriminatory treatment.

The district court allowed McAlester's expert to testify on statistics for both the ramp service unit and the entire Denver facility. United asserts the expert's statistical analysis should be limited to the ramp service unit rather than the whole Denver facility, relying on *Joslin Dry Goods Co. v. Equal Employment Opportunity Comm'n,* 483 F.2d 178 (10th Cir.1973). In *Joslin,* the plaintiff filed a racial discrimination with the EEOC alleging her termination was based on race. The EEOC sought to subpoena personnel records from all of Joslin's Colorado stores. On Joslin's motion the court dismissed the subpoena because each store maintained separate personnel records and there was no allegation of company-wide hiring and firing policies or practices. McAlester's situation is distinguishable because the statistics are solely for the Denver facility rather than other locations where United operates, and United's disciplinary procedures apply throughout the company. In *Anderson,* 690 F.2d 796, we held it was error for the trial judge to exclude statistical evidence of the city's employment of female department heads in an individual's claim of discrimination in denying her application for a single position. Likewise, in McAlester's case, the trial judge properly allowed the admission of the expert's statistical analysis of the whole Denver facility, although McAlester's discipline occurred in the ramp service unit, because the disciplinary policy applied to all units within the Denver facility.

United next asserts that the expert's statistics are flawed because the sample of eight terminations in the ramp service gives unreliable conclusions. While statistics based on a small sample may be excluded if they are too speculative, *Mayor of City of Philadelphia v. Educational Equality League,* 415 U.S. 605, 620–21, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974), the district court in McAlester's case did not abuse its discretion in concluding the sample of sixty-three terminations for the whole facility was probative. The statistics based on the eight terminations for the ramp service are equally probative because they can be compared to the statistics for the whole facility. *Hazelwood,* 433 U.S. at 307–12, 97 S.Ct. at 2741–44; *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943 (6th Cir.1987) (small sample of seventeen in age discrimination case was suspect where plaintiff presented no other statistics against which to compare it). McAlester's expert testified that he was able to obtain statistically significant results with the binomial probability distribution because it takes into account the small sample size. This testimony was unrefuted by United. We will not second-guess the significance of a small sample size where United has failed to present any evidence of its lack of reliability.

United also complains the expert's statistics are flawed because his analysis failed

to consider each terminated employee's disciplinary history, reason for termination, union or nonunion status, or the supervisor involved. United's argument is unpersuasive. Statistics showing racial imbalance are probative in a case such as this one because such imbalance is often a telltale sign of purposeful discrimination; absent explanation, it is ordinarily to be expected that nondiscriminatory termination practices will in time result in a group of terminated employees which have these factors proportionately distributed throughout the group and is more or less representative of the whole population of employees at the Denver facility. *See Teamsters*, 431 U.S. at 339, n. 20, 97 S.Ct. at 1856, n. 20. United presented no expert testimony that the failure of McAlester's expert to consider these factors changed his statistical determination that the high rate of minority termination was not the result of chance. Although United developed through cross-examination that failure to consider these factors may result in skewed statistical results, the weight to be accorded this statistical evidence is the province of the jury which we will not invade where there is no showing of manifest error.

We conclude that each of United's alleged flaws in the statistical evidence went to the weight of that evidence, not its admissibility. The district court did not abuse its discretion in admitting the expert's statistical analysis of the terminations for both the ramp service and the whole Denver facility.

### Arbitration Decision

▮▮▮▮ Upon McAlester's motion, the district court excluded two of United's exhibits, the written fourth-step grievance decision of the industrial relations representative, Richards, and the arbitrator's written opinion. United asserts the court erred in failing to admit these exhibits as exceptions to the hearsay rule under Fed.R.Evid. 801, 803(6), and 803(8)(C).[7] Even if United's exhibits are admissible as exceptions

to the hearsay rule, the trial court still has the duty to balance the probative value of the evidence against its potential for unfair prejudice under Fed.R.Evid. 403. *Ponderosa Sys., Inc. v. Brandt*, 767 F.2d 668, 671 (10th Cir.1985). Balancing the probative value of evidence against its potential of prejudice is a discretionary decision for the trial judge, *Rigby*, 548 F.2d at 293, which we will not overturn unless it is clearly erroneous, *Higgins*, 752 F.2d 492.

In support of the exclusion of these two exhibits, the district court reasoned that both the grievance and arbitration decisions were internally prepared by United. The district court found the reference in the grievance to other cases would mislead the jury and, in effect, usurp the court's role in instructing the jury on the law. Although the arbitrator's opinion mentions the EEOC discrimination claim, it did not deal with the discrimination issue. The court concluded the arbitrator's opinion did not attain the dignity of a public record under Fed.R.Evid. 803(8).

United has failed to convince this court that the district court abused its discretion by excluding these exhibits because they were more prejudicial than probative. Any error in the court's failure to admit these documents as exceptions to the hearsay rule is harmless, because United failed to establish that these exclusions affected its substantial right where the district court allowed United to present testimony on the rationale and result of these decisions. *See* 28 U.S.C. § 2111; *Wilmington*, 793 F.2d at 919 (8th Cir.1986).

### Judgment Notwithstanding the Verdict and New Trial

United contends the district court erred in denying its motion for judgment n.o.v. because McAlester failed to carry his burden of proving intentional race discrimination, and in the alternative, denying its motion for new trial because the jury ver-

---

7. United also contends that *Alexander*, 415 U.S. at 60, 94 S.Ct. at 1025, requires the admission of the arbitrator's decision. Our reading of *Alexander* indicates admission of an arbitrator's de-
cision is discretionary, not mandatory. *See also, Wilmington v. J.I. Case Co.*, 793 F.2d 909, 919 (8th Cir.1986).

dict was against the manifest weight of evidence.

■ In reviewing a district court's denial of a motion for judgment n.o.v., we may find error only when the evidence points but one way and is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made. While a scintilla of evidence is not enough, we must affirm if evidence was before the jury upon which it could properly find against the movant. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988).

■ In reviewing the district judge's denial of the motion for a new trial, the initial decision to grant or deny such a motion rests with the district judge. We review the denial of a motion for new trial only for abuse of discretion. So long as a reasonable basis exists for the jury's verdict, we will not disturb the district judge's ruling. *Suggs v. State Farm Fire and Cas. Co.*, 833 F.2d 883, 886–87 (10th Cir. 1987), *cert. denied*, — U.S. —, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988).

■ Our review of the record in the present case convinces us that there was sufficient evidence from which the jury could rationally conclude United discriminated against McAlester because of his race. The district judge did not abuse his discretion in denying United's motions for judgment n.o.v. or new trial.

McAlester alleged he suffered racial discrimination because he received disparate treatment under United's disciplinary procedures. *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, establishes the model of proof for an individual disparate treatment case. A prima facie case of discriminatory termination is made by showing (i) that McAlester belongs to a racial minority; (ii) that he was discharged for violating a work rule of United; and (iii) that similarly situated non-minority employees who violated the same rule were treated differently than he was. *Brown v. A.J. Gerrard Mfg. Co.*, 643 F.2d 273, 276 (5th Cir.1981). United did not contest the first two elements.

■ United asserts McAlester failed to prove intentional race discrimination because he did not show specific racial animus on the part of his supervisors. This is not McAlester's burden. While McAlester must produce evidence of discriminatory intent or motive to establish a prima facie case, it can be inferred from the mere fact of differences in treatment. *Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15 (1977); *Clark v. Atchison, Topeka and Santa Fe Ry. Co.*, 731 F.2d 698, 702 (10th Cir.1984). McAlester need not show his supervisors were personally prejudiced against him. Discriminatory treatment may be shown by gross statistical disparities and specific instances of individual discrimination. *Hazelwood*, 433 U.S. at 307–08, 97 S.Ct. at 2741; *Teamsters*, 431 U.S. at 338–39, 97 S.Ct. at 1855–56. McAlester presented statistical evidence of discrimination and testimony about individuals who violated similar rules where white employees were suspended, but minority employees were terminated. This evidence was sufficient to establish a prima facie case of intentional race discrimination. But, this court need not review whether McAlester made a prima facie case where the district court did not dismiss McAlester's claim on United's motion at the conclusion of McAlester's case. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

■ The burden then shifts to United to rebut the presumption of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). United has the evidentiary burden of articulating a reasonably specific, legitimate, non-discriminatory reason for its termination of McAlester. Rebuttal can proceed along two fronts. First, proof that plaintiff's statistics are inaccurate or insignificant may dispel the plaintiff's proof of disparate result. Second, the employer may seek to provide a nondiscriminatory explanation for the apparently discriminatory result. *See Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 817 (5th Cir.1982), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982).

On the first front, United extensively cross-examined McAlester's statistical expert and established the fact that statistics may be misleading, but it did not present its own expert to show any inaccuracies in McAlester's analysis. On the second front, United presented three supervisors involved in McAlester's termination. Each testified he did not consider McAlester's race in his decision. They also testified that they applied a neutral rule which required termination unless there were mitigating circumstances. Good-faith assertions alone are insufficient to meet United's burden, *id.* at 817, but the application of a neutral rule is sufficient to rebut the presumption of discrimination. *Burdine,* 450 U.S. at 252–58, 101 S.Ct. at 1093–96.

If the defendant meets the burden of articulating a reasonably specific, legitimate reason for its action, the plaintiff then must show that the defendant's reason is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.

██ Statistics may be used to prove the employer's racially neutral reason for termination is purely pretext. *Id.* at 805, 93 S.Ct. at 1825; *Anderson,* 690 F.2d at 802. When terminations are often based on subjective evaluations of mitigating circumstances, statistical evidence as to the overall disciplinary practices of the employer is especially significant. McAlester presented the unrebutted statistical evidence that in the Denver facility blacks received twenty-four percent of the terminations over a five-year period, although they made up only six percent of the work force. The statistics also established that for the ramp service, blacks received six of eight terminations over a two-year period. The likelihood of this occurring by chance is one in 440,000. These unrefuted statistics are sufficient to support a jury's finding of pretext against United. *See Castaneda v. Partida,* 430 U.S. 482, 495–96, 97 S.Ct. 1272, 1280–81, 51 L.Ed.2d 498 (1977).

██ Pretext may also be shown by specific examples of other individuals receiving similar disparate discipline. *Teamsters,* 431 U.S. at 338–39, 97 S.Ct. at 1855–56. McAlester presented evidence of several white employees who committed offenses for which termination was required but for which they were not terminated. United asserts these employees were not similarly situated because they presented mitigating circumstances or committed different rule violations. While United's assertion may exclude employees who received lesser discipline because of the mitigating circumstances of substance abuse, the testimony of other employees arguably establishes disparate treatment. The fact that these other employees did not commit the exact same offense as McAlester, does not prohibit consideration of their testimony. It is sufficient if these employees did acts of comparable seriousness. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580 n. 11, 49 L.Ed.2d 493 (1976).

McAlester also developed through cross-examination of United's supervisors that Mr. Cooper had only recommended two terminations and both were black employees. When two employees were disciplined for insubordination, the black employee was terminated and the white employee received three days without pay. Mr. Cooper knew of no white employees where progressive discipline had not been used. When two white employees were charged with falsely obtaining sick leave, similar to the charge against McAlester, one was reinstated after discharge during the grievance process, and the other received discipline less than termination because of his substance abuse. When two employees were charged with receiving pay under false pretenses when they had claimed full pay for a day when they were late, the white employee received three days without pay and the Hispanic employee was terminated.

While the jury could have reached different conclusions based upon the evidence in the record, we believe the trial court correctly denied United's motions for judgment n.o.v. and new trial because there is sufficient evidence to support the jury's finding that United's termination of McAlester for the alleged rule violation was a

**1262**

pretext for racial discrimination. We therefore conclude the trial court did not err in ordering McAlester's reinstatement to his former position.

United's assertions of error all challenged discretionary rulings by the district judge on the admission of statistical evidence, the exclusion of the written grievance and arbitration decisions, and the denial of motions for new trial and judgment n.o.v. After careful review of the record, we find the district judge did not abuse his discretion and his rulings were not clearly erroneous. The district court decision is AFFIRMED.