76 F.3d 394
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Sharon WILSON, Plaintiff-Appellant,
v.
UTICA PARK CLINIC, INC., Defendant-Appellee.
 No. 95-5060.
(D.C.No. 94-C-147-B)
 United States Court of Appeals, Tenth Circuit.
 Feb. 7, 1996.
 
 Before SEYMOUR, Chief Judge; and PORFILIO and TACHA, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Sharon Wilson filed suit against her former employer, Utica Park Clinic, alleging racial discrimination in violation of 42 U.S.C.1981. The district court granted summary judgment in favor of Utica Park, finding Ms. Wilson failed to present any evidence to show Utica Park's reason for termination was pretextual. We agree and affirm.
 
 
 2
 The parties are well-acquainted with the facts. Therefore, we will not reiterate them here except to the extent necessary to supplement our analysis. From March 1990 to February 1992, Utica Park employed Ms. Wilson, an African-American, as a radiology technician. During her twenty-three month tenure, Ms. Wilson was tardy on 288 occasions and absent 11 times. After Ms. Wilson's eleventh absence, Helen Stopp, the Associate Director of Utica Park Clinic, fired her for excessive absenteeism and tardiness.
 
 
 3
 Ms. Wilson, who was eight-months pregnant at the time of her termination, contends she was the victim of disparate treatment. In short, Ms. Wilson claims Utica Park failed to accommodate her pregnancy in the same manner as Caucasian employees. Ms. Wilson asserts Utica Park allowed four other employees who became pregnant to use accrued sick days and vacation days to cover their absences, but did not permit her to do so.
 
 
 4
 This court reviews the grant of a summary judgment motion de novo, applying the same standard used by the district court. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991).
 
 
 5
 In disparate treatment cases, this circuit follows the burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir.1988). To state a prima facie case of discriminatory termination, a plaintiff is required to show: (1) she belongs to a racial minority; (2) she was discharged for violating a work rule of the employer; (3) similarly situated non-minority employees who violate the same rule were treated differently. Id. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate "a reasonably specific, legitimate, non-discriminatory reason" for the plaintiff's termination. Id. However, if the defendant presents a facially legitimate, non-discriminatory reason for the termination, the burden again shifts to the plaintiff. The plaintiff must then show the defendant's reason for termination is merely a pretext for race-based discrimination. Id. at 1261.
 
 
 6
 To assert a claim of disparate treatment, the plaintiff must show she was treated differently than other similarly situated non-minority employees who violated the same rule. Elmore v. Capstan, Inc., 58 F.3d 525, 529-30 (10th Cir.1995). Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531, 1547 (S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987).
 
 
 7
 Despite Ms. Wilson's contentions to the contrary, the record is bereft of any evidence she was treated differently than other similarly situated employees at Utica Park. Indeed, the record shows Ms. Wilson actually received more favorable treatment than some of her co-workers in the radiology clinic. During the time Ms. Wilson was employed by Utica Park, two Caucasian employees and one Hispanic employee were reprimanded and ultimately terminated for far less tardiness and absenteeism than Ms. Wilson.
 
 
 8
 Although Ms. Wilson compares herself to four other pregnant co-workers, nothing in the record indicates these women were similarly situated. Ms. Wilson presented no evidence her co-workers had comparable attendance records during their pregnancies. Furthermore, three of the women worked under different supervisors and in different departments than Ms. Wilson. The fourth woman, unlike Ms. Wilson, suffered from preeclampsia and was accommodated under the Americans with Disabilities Act.[2]
 
 
 9
 We conclude Ms. Wilson has failed to state a prima facie case for disparate treatment under 42 U.S.C.1981. Nevertheless, even if she had met her initial burden, we believe Ms. Wilson presented no evidence Utica Park's facially non-discriminatory reason for terminating Ms. Wilson was pretextual.
 
 
 10
 The record reveals Ms. Stopp fired Ms. Wilson after a total of 288 tardies and 11 absences. Utica Park's written policies provide an employee who is absent on more than five occasions in a one year period is subject to disciplinary action up to and including termination. Because two tardies equal one "occurrence" of absence for the purposes of disciplinary action, Ms. Wilson actually had incurred 155 occurrences of absence at the time of her termination. Other than her own conclusory allegations, Ms. Wilson failed to present any evidence to dispute these numbers. Accordingly, we think the record more than supports the district court's finding that Utica Park set forth a legitimate, non-discriminatory reason for Ms. Wilson's termination.
 
 
 11
 Contending race was a factor in her discharge, Ms. Wilson alleges her immediate supervisor, Jamie Price Rumfield, told racial jokes, refused to permit Ms. Wilson to eat breakfast with her co-workers, and referred African-American patients to Ms. Wilson because "she couldn't stand the smell." Ms. Wilson further contends Ms. Rumfield ignored her tardiness and unapproved absences prior to her pregnancy and only commenced the disciplinary procedures after learning of it. Ms. Wilson argues all of these events make clear she was terminated because of her race.
 
 
 12
 We cannot agree. To show pretext, Ms. Wilson must demonstrate Utica Park's proffered non-discriminatory reason for her termination is unworthy of belief. See Randle v. City of Aurora, 69 F.3d 441, 453 (10th Cir.1995). Furthermore, Ms. Wilson must demonstrate a nexus between the allegedly discriminatory acts and Ms. Stopp's decision to terminate her. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir.1994).
 
 
 13
 Here, the record is devoid of evidence Utica Park's facially non-discriminatory reason for Ms. Wilson's termination is unworthy of belief. Moreover, assuming the incidents of alleged bias by Ms. Rumfield took place, she had no authority to discharge Ms. Wilson. Moreover, Ms. Wilson has not shown any nexus between Ms. Rumfield's actions and her termination. Ms. Stopp stated in her deposition she fired Ms. Wilson for her excessive absenteeism and tardiness, and Ms. Wilson does not allege Ms. Stopp's decision was racially motivated in any way.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Ms. Wilson's own physician, Dr. Martha Dannenbaum, testified Ms. Wilson suffered no disability during her pregnancy requiring an accommodation under the ADA