Kimberly J. STARKS, Plaintiff,

v.

COORS BREWING COMPANY, INC., a Colorado corporation, Defendant.

Civil Action No. 95–WM–3164.

United States District Court,
D. Colorado.

Jan. 31, 1997.

---

Donald P. MacDonald, Lynne L. Hicks, Denver, CO, for Plaintiff/Petitioner.

K. Preston Oade, Jr., Sherri A. Heckel, Holme Roberts & Owen, Denver, CO, for Defendant/Respondent.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION IN LIMINE

MILLER, District Judge.

This matter was originally before me on defendant's Motion for Summary Judgment to dismiss plaintiff's claims of discriminatory discharge and retaliation under Title VII, 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a). Defendant belatedly raises a jurisdictional question on whether plaintiff exhausted her reme-

dies on her retaliation claim. The Motions are denied for the reasons stated below.

## I.

### *Jurisdiction.*

As the plaintiff brings claims under Title VII, this Court has concurrent jurisdiction pursuant to 42 U.S.C. 2000e–5(f)(3). *Yellow Freight System, Inc v. Donnelly,* 494 U.S. 820, 826, 110 S.Ct. 1566, 1570, 108 L.Ed.2d 834 (1990).

## II.

### *Statement of Issues.*

Has plaintiff made a sufficient showing that her sex or her race and retaliation were determining factors in her termination to withstand a motion for summary judgment?

Did plaintiff sufficiently exhaust her administrative remedies with respect to her retaliation claim to meet the jurisdictional requirement of a such a claim?

## III.

### *Standard of Review.*

Summary Judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of any issue of material fact. If that burden is met, the opponent has a burden of presenting specific facts which show that there is a genuine, material issue for trial. In doing so, the opponent "may not rest upon the mere allegations or denials of the adverse party's pleading...." Fed. R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410 (10th Cir.1993). Ultimately, summary judgment is improper if, viewing the facts before the court in a light most favorable to the non-moving party and drawing all reasonable inferences in fa-

vor of that party, a reasonable jury could find in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## IV.

### *Background.*

Plaintiff, an African–American female, was employed by defendant Coors Brewing Company, Inc. ("Coors") from April 17, 1989, through August 24, 1994, in positions of increasing responsibility and pay. In January of 1993, she was promoted to defendant's warehouse ("Warehouse") as an operator of a loading vehicle. With one exception,[1] plaintiff's performance was not an issue until the events resulting in her termination.

On August 19, 1994, plaintiff was involved in a water fight in the Warehouse with a temporary co-employee, Mr. Medina, on the occasion of that employee's last day of work, a traditional occurrence according to plaintiff. She poured one can of water on the lap of Mr. Medina, and threw two additional cans of water which missed him and hit the floor.

Rick Paine, the Warehouse supervisor serving as plaintiff's supervisor while her immediate supervisor, Dwayne Ashbaugh, was on vacation, investigated the water fight on behalf of the defendant. At first, plaintiff repeatedly denied having any knowledge of or participation in the fight until confronted with co-workers' statements of her involvement. Plaintiff then told the supervisor that two other employees, Tim Gallardo and Joe Coleman, had also been involved in the fight. Messrs. Gallardo and Coleman denied any role and Mr. Paine determined that no employees other than plaintiff and Mr. Medina had been involved, even though there was corroboration that water fights on a person's last day work were commonplace. Since it was his last night as a temporary employee, Mr. Medina received no discipline other than a note in his file that he would not be re-

---

1. Plaintiff was involved in a collision with another loading vehicle in June of 1994 causing both vehicles' loads to spill and about $1,000.00 worth of product loss. Defendant formally disciplined Plaintiff and the other employee by giving them each a final written warning. Plaintiff appealed this sanction to Coors' Appeal Board, which reduced the final written warning to a first written warning.

hired. Messrs. Coleman and Gallardo were not disciplined.

On the same day as the water fight, plaintiff was involved in a dispute with a co-worker, Ranger Geremaia, who filed charges of sexual harassment against her. Mr. Geremaia claimed that plaintiff initiated the confrontation, directing profanities at him. Plaintiff denies she initiated the confrontation and claims that Mr. Geremaia engaged in similar verbal attacks. Coors management investigated these charges by interviewing bystanders to the confrontation who corroborated Mr. Geremaia's allegations. There is no corroboration of plaintiff's account of the incident, but she asserts that is the result of being prohibited from coming on Coors' property and speaking to its employees during the pendency of the investigation. Mr. Geremaia was not similarly enjoined from having access to witnesses.

Defendant investigated the incidents under its personnel policy with which plaintiff was familiar. This policy allows immediate termination on the first instance of certain conduct, including but not limited to: (1) dishonesty, which is defined in part as "making or supplying false statements or information"; (2) gross misconduct, which is defined in part as "deliberate violation of published safety rules ... [and] horseplay"; and (3) sexually harassing or abusing another individual. The personnel policy makes no distinction between these different types of conduct in terms of their relative seriousness; *i.e.* it does not rank one type of conduct as being a more serious an offense than any of the others.

On August 25, 1994, Mr. Paine fired plaintiff because of her involvement in the water fight, horseplay, lying about her involvement in the fight, and use of abusive and foul language toward Mr. Geremaia. Mr. Paine characterized these actions together as "gross misconduct" allowing immediate termination. Plaintiff appealed her termination to the Coors Appeal Board, admitting her involvement in the water fight. The Appeal Board upheld the termination, finding that plaintiff's actions violated defendant's policies and emphasizing her dishonesty about her involvement in the water fight.

## V.

### *Discrimination claim.*

#### A. *Prima facie* case.

Plaintiff claims that defendant fired her on the basis of her race, sex or both in violation of Title VII. In its motion, defendant asserts that plaintiff has failed to establish a *prima facie* case and that it is therefore entitled to summary judgment.

To make out a *prima facie* case of disparate treatment arising from discharge for violating a work rule, Plaintiff must show: (1) she belongs to a protected class; (2) she was fired for violating a work rule; and (3) similarly situated non-minority employees were treated differently. *Elmore v. Capstan, Inc.*, 58 F.3d 525, 529–30 (10th Cir. 1995). Only the third element of the *prima facie* case is all at issue here.

■ To satisfy the similarly-situated element, Plaintiff must demonstrate that non-minority employees who committed violations of work rules of "comparable seriousness" were not disciplined as severely as she. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir.1988).

Plaintiff identifies several employees, not women and not of the same minority racial status as plaintiff, whom, she asserts, received disparate treatment. The first is Mr. Geremaia, who plaintiff and her co-worker, Florence Wong, swear harassed and provoked co-workers, refused to perform his duties to help plaintiff or Ms. Wong and other tasks which were part of his duties in the Warehouse. Under defendant's personnel policy, such insubordination, which is defined as a refusal to perform assigned duties, or his abusive conduct toward fellow employees is ground for immediate termination. Plaintiff and Ms. Wong also swear that Mr. Geremaia's wrongful conduct was reported to their supervisor, Dwayne Ashbaugh, but that he took no action to discipline Mr. Geremaia.

A second employee plaintiff presents to establish her *prima facie* case is Ron Kimeneau. Affidavits state that Mr. Kimeneau called Plaintiff a "nigger" on one occasion and made other comments "about ... [plain-

tiff and Wong] ... being 'black and white.' " Defendant's Personnel Policy defines gross misconduct as "jokes or derogatory remarks ... on the basis of race, religion, color, national origin, [or] sex...." Although plaintiff and Ms. Wong reported Mr. Kimeneau's behavior to Mr. Ashbaugh on repeated occasions, he advised plaintiff to settle the matter herself, and did not discipline Mr. Kimeneau.

A third example of disparate treatment for "gross misconduct," again supported by affidavits, are statements made by another fellow employee, Dan Kearn, to plaintiff about the Ku Klux Klan during lunch breaks. Even though plaintiff and Ms. Wong complained to Mr. Ashbaugh about this behavior, Mr. Kearn's racially oriented teasing was never investigated and he was never disciplined for these violations of Defendant's rules.

The final non-minority Warehouse employee who allegedly received different treatment than plaintiff is Greg Lewis. Affidavits state that he repeatedly told plaintiff and Ms. Wong that they could not do their jobs because they were women. In addition, he consistently refused to perform assigned duties which would have aided Ms. Wong and plaintiff. Again, such conduct is also grounds for immediate termination under the personnel policy. Nevertheless, and notwithstanding reports to him, Mr. Ashbaugh never investigated or took other action to resolve the problem. Ultimately, at the insistence of plaintiff and Ms. Wong, a meeting with supervisors and Mr. Lewis was held to discuss and hopefully put a stop to Mr. Lewis' actions. According to plaintiff, Mr. Lewis began to "pout" during the meeting. Rather than seriously inquiring into the events, the supervisors attempted to placate him, leaving his behavior unredressed.

▌ Relying on its interpretation of an unpublished opinion,[2] which of course is not precedent,[3] Defendant argues that Messrs. Geremaia, Kimeneau, Kearn and Lewis are not similarly situated to plaintiff because they were under the supervision of Mr. Ashbaugh, while Plaintiff was investigated and fired by Mr. Paine, who acted while Mr. Ashbaugh was on vacation. Such a restrictive reading of *McAlester v. United Air Lines, supra, i.e.* that an employee is not similarly situated to a plaintiff unless that employee was supervised by the person who terminated the plaintiff, cannot be justified. In the first instance, reference in *McAlester* to disparate treatment by two different supervisors ("Mr. Day" and "Mr. Cooper") belies defendant's argument of a "same supervisor" requirement. Further, to place disparate treatment analysis in such a Procrustean Bed could easily frustrate Title VII's remedial scheme by allowing discriminatory employers to evade liability through the simple expedient of using a different supervisor to terminate the minority employee. Moreover, the Tenth Circuit has consistently treated the fact that discipline was administered by different supervisors as a possible non-discriminatory explanation for proven disparate treatment, not as an absolute bar to a disparate treatment claim. *See Elmore v. Capstan, Inc.,* 58 F.3d at 531–32 (noting that unexplained differences in the treatment of minority and non-minority employees may be due to the fact that discipline was administered by different supervisors); *EEOC v. Flasher Co.,* 986 F.2d 1312, 1320 ("Sometimes apparently irrational differences in treatment between different employees that cannot be explained on the basis of clearly articulated company policies may be explained by the fact that the discipline was administered by different supervisors."). Therefore, in this Circuit the existence of different supervisors is merely a factor that the fact finder may consider and not a dispositive determinant in every case.

Defendant also contends that plaintiff may not use Coors' treatment of Mr. Geremaia to show disparate treatment, because she "does not even try to assert that Geremaia cursed at her on August 19, 1994 or that she filed a

---

**2.** *Wilson v. Utica Park Clinic, Inc.,* 95–5060, 1996 WL 50462 (10th Cir.1996).

**3.** 10th Cir.R. 36.3. Even were the case read as defendant argues, the unpublished decision does not have "persuasive value" under the local Rule because, as indicated in the text of this opinion, published opinions of this Circuit have addressed the issue, at least by implication.

sexual harassment claim against him." However, the employees with whom plaintiff seeks to compare herself need not have committed identical infractions. It is sufficient that they violated rules of "comparable seriousness." *McAlester v. United Air Lines, Inc.*, 851 F.2d at 1260. Messrs. Geremaia, Kimeneau, Kearn and Lewis and Plaintiff have each engaged in conduct that is grounds for immediate termination under defendant's personnel policy.[4] In each of their cases, either multiple rules were broken, or individual rules were breached repeatedly. Plaintiff has presented sufficient facts for a reasonable jury to infer that similarly-situated nonminority employees violated rules of comparable seriousness, but were not subjected to thorough investigation and ultimate termination as plaintiff was. Therefore, plaintiff has presented sufficient facts to make a *prima facie* case of employment discrimination.

## B. Pretext.

■ "Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a facially nondiscriminatory reason for its employment action." *Elmore v. Capstan, Inc.*, 58 F.3d at 530. If the defendant does so, then the plaintiff has the burden to prove that the decision was actually motivated by discrimination. *Id.* The plaintiff may prove discrimination by introducing direct evidence of discrimination or by showing that the proffered reasons for discharge are pretextual. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). One method of showing pretext is by demonstrating that similarly situated workers were treated differently. *EEOC v. Flasher Co.*, 986 F.2d at 1319–22.

It is undisputed that defendant has presented legitimate non-discriminatory reasons for the discharge of plaintiff. However, there is a question of whether these reasons are pretextual. The evidence discussed above regarding the manner in which Coors treated non-minority employees as compared to the way in which it treated Plaintiff is sufficient to raise a genuine question of material fact about the issue of pretext. That apparent disparate treatment combined with other factual information,[5] would allow a reasonable jury to infer that race and sex were the real determining factors in defendant's decision to fire plaintiff. Thus Plaintiff has met her burden to withstand summary judgment on her claim of race and sex discrimination.

## VI.

### *Retaliation.*

Plaintiff claims that defendant violated Title VII by firing her in retaliation for her internal complaints of sex and race discrimination of Messrs. Geremaia, Kimeneau, Kearn and Lewis. In its motion for summary judgment, defendant argues that plaintiff lacks the evidence necessary to establish this claim.

The *McDonnell Douglas* burden-shifting analysis also applies to retaliation claims. *Burrus v. United Telephone Co.*, 683 F.2d 339, 343 (10th Cir.1082). To make a *prima facie* case of retaliation the plaintiff must show: (1) she was engaged in protected opposition to Title VII discrimination or she participated in a Title VII proceeding; (2) she was disadvantaged by an action of her employer after or at the time of such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action. *Id.* If the plaintiff makes a *prima facie* case, the employer then has the burden of showing a legitimate non-discriminatory reason for the adverse action, and finally the plaintiff must show that the reason was a pretext for discrimination. *Id.*

---

4. Defendant's personnel policy makes no distinction, in terms of the seriousness of the offense, between lying, abusive conduct, sexual harassment, gross misconduct, and insubordination. It is also relevant that the policy does not state that violations of several rules is any more serious an infraction than multiple violations of the same rule.

5. Such facts include affidavit testimony that water fights were commonplace and went unchecked until the one involving plaintiff; that abusive language was commonplace in the Warehouse; that Mr. Ashbaugh told plaintiff that he did not like women in the Warehouse; and that Mr. Paine said to plaintiff that he wished "it were back in the days."

Plaintiff's internal complaints to her supervisors were protected activities and certainly she was disadvantaged by her termination. The only remaining issue is whether there was a causal connection between the complaints and the termination. As discussed above, the complaints about Mr. Lewis culminated in a meeting that occurred two to three weeks prior to plaintiff's termination. Such temporal proximity between the protected activity and the adverse action establishes a causal connection. *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1261–62 (10th Cir.1994). Thus, Plaintiff has shown a *prima facie* case of retaliation.

Defendant has provided legitimate nondiscriminatory reasons for its discharge of plaintiff. Again, however, plaintiff has presented specific facts to show that there is a genuine issue of whether the proffered reasons are pretextual. Hence, summary judgment is improper.

Defendant raised a second challenge to plaintiff's retaliation claim in a curiously styled motion, filed January 24, 1997. Although the motion is presented as a motion in limine to exclude evidence, I treat it as a suggestion of lack of subject matter jurisdiction under Fed.R.Civ.P. 12(h) to hear the claim because plaintiff has failed to exhaust her administrative remedies.

Certainly, exhaustion is a "jurisdictional prerequisite" to suit under Title VII. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir.1996); 42 U.S.C. § 2000e–5(b) and (c).[6] "However, complaints to the EEOC must be liberally construed in order to accomplish the purposes of the Act, since such complaints are written by the layman not versed either in the technicalities of pleading or jurisdictional requirements of the act." *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 860 (10th Cir.1983) (internal citations omitted).

Defendant contends that plaintiff's EEOC charge can not reasonably be read to include a charge of retaliation, focussing on the fact that plaintiff failed to check the box marked "retaliation" on her intake form. Defendant also asserts that the affidavit plaintiff filed with her charge does not provide information from which the EEOC could be put on notice of retaliation. Both of defendant's assertions are contradicted by plaintiff's EEOC affidavit, which reads "I have been forced to work in a hostile environment where it was made clear to me that neither women nor African Americans are welcome. I have complained of these things to my supervisors and nothing was ever done except to fire me unfairly." Furthermore, plaintiff stated on her intake form that "I stood up for my rights against Dwayne Ashbaugh" as a perceived reason for her termination. Those statements can be read to give notice of a claim of retaliation. Therefore, consistent with the liberal manner in which one is to construe EEOC charges, I find that plaintiff's EEOC charge included retaliation, despite her failure to check the box marked "retaliation." *See Jenkins v. Blue Cross Mutual Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir.1976) (" '... (W)e decline to hold that the failure to place a check mark in the correct box is a fatal error.' ").

Accordingly it is ordered as follows:

1. Defendant's Motion for Summary Judgment is denied as to all claims;

2. Defendant's Motion in Limine to Exclude Evidence of Retaliation in Violation of Title VII, for Failure to Exhaust Administrative Remedies is denied; and

3. Each party shall bear its own costs and attorney's fees.

---

6. The purpose of the exhaustion requirement is to provide the employer and the EEOC with notice of a claim so that all parties may attempt a prompt conciliation thereof. *Jensen v. Board of County Comm'rs*, 636 F.Supp. 293, 300 (D.Kan. 1986).