Deborah R. RICHARDSON, Plaintiff,

v.

TOPEKA METROPOLITAN TRANSIT AUTHORITY; and Dena Anson, Defendants.

No. Civ. A. 96–4037–DES.

United States District Court, D. Kansas.

Nov. 25, 1997.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Plaintiff.

Marta Fisher Linenberger, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on defendant'S Motion for Summary Judgment (Doc. 64) on plaintiff's employment discrimination claims. Plaintiff has filed a Memorandum Response in Opposition to defendant's Motion (Doc. 68). Defendant has filed a Reply (Doc. 69). For the reasons set forth below, defendant's Motion for Summary Judgment is denied.

## I. BACKGROUND

Plaintiff Deborah Richardson, an African-American female, was hired by defendant Topeka Metropolitan Transit Authority ("TMTA") as a Customer Service clerk on August 18, 1993. One of her responsibilities as a Customer Service clerk was to maintain a "cash box" used in her cashier duties. Ms. Richardson continued to work as a Customer Service clerk until her discharge on February 23, 1995, for allegedly violating TMTA's policies concerning the handling of money. Ms. Richardson's immediate supervisor during her tenure at TMTA was Dena Anson, TMTA's marketing manager.

Additional facts are set forth throughout the court's discussion as necessary.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, at 2509–10, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

A court must view the facts in the light most favorable to the nonmovant and allow

the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## III. DISCUSSION

Defendant seeks summary judgment on plaintiff's claim that defendant violated 42 U.S.C. § 1981, Title VII of Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1) through 2000e–17 ("Title VII"), and the Kansas Act .Against Discrimination, Kan. Stat. Ann. §§ 44–1001 through 44–1044 ("KAAD"), by discharging her on the basis of her race. 42 U.S.C.A. § 1981 prohibits discrimination in the making and enforcement of employment contracts. Title VII and the KAAD make it an unlawful employment practice for an employer to discharge any individual because of such individual's race. 42 U.S.C. § 2000e–2(a)(1); Kan. Stat. Ann. §§ 44–1001.

■ Plaintiff has asserted identical claims of race discrimination under both Title VII and the Kansas Act Against Discrimination (KAAD). Although not controlling, federal decisions applying Title VII are persuasive authority in construing KAAD claims because the statutes are analogous. *See Best v. State Farm Mut. Auto. Ins. Co.,* 953 F.2d 1477, 1479 (10th Cir.1991); *Woods v. Midwest Conveyor Co., Inc.,* 231 Kan. 763, 648 P.2d 234 (1982) (Title VII persuasive authority when interpreting comparable provisions under the KAAD). Neither party suggests that a different analysis is required under the Kansas statute. Therefore, the court will apply Title VII standards in deciding defendant's summary judgment motion on plaintiff's KAAD claim.

The Tenth Circuit has adopted the burden-shifting format set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as a framework for analyzing claims under Title VII when no direct evidence of discrimination exists. *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992). This framework has also been applied to claims brought under 42 U.S.C. § 1981. *See Randle v. City of Aurora,* 69 F.3d 441 (10th Cir.1995) (applying the *McDonnell Douglas* framework to 42 U.S.C. § 1981 claim).

■ To survive summary judgment, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the plaintiff has established a prima facie case, a rebuttable presumption of discriminatory intent arises and the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [its challenged conduct]." *Id.* "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *E.E.O.C.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). However, the employer's reason for the adverse action "must be reasonably specific and clear." *Id.*

If the defendant employer meets this burden, the presumption of discrimination arising from the prima facie case "simply drops out of the picture." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). " 'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451), *cert. denied,* —— U.S. ——, 116 S.Ct. 2552 (1996)). The plaintiff may establish pretext by showing " 'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explana-

tion is unworthy of credence.'" *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). *See Randle*, 69 F.3d at 451. The court must determine whether the evidence, interpreted in the light most favorable to the plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir.1995) (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993).

■ However, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 511, 113 S.Ct. at 2749. Therefore, "showing pretext alone is not sufficient for the plaintiff to carry the day, although it may support an inference that the real reason for the employer's action is discriminatory." *Pilditch v. Board of Educ. of City of Chicago*, 3 F.3d 1113, 1116 (7th Cir.1993) (citing *St Mary's*, 509 U.S. at 511, 113 S.Ct. at 2749). "[T]he Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *St Mary's*, 509 U.S. at 511, 113 S.Ct. at 2749 (citations omitted).

To establish a prima facie case of discrimination pursuant to Title VII and 42 U.S.C. § 1981, plaintiff must demonstrate (1) that she belongs to a protected class; (2) that she suffered an adverse employment action; and (3) that similarly situated non-protected employees were treated differently. *See, e.g., Elmore v. Capstan, Inc.*, 58 F.3d 525, 529–30 (10th Cir.1995); *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir.1992). Plaintiff's burden in establishing her *prima facie* case is relatively light. *St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2751 ("what is required to establish the *McDonnell Douglas prima facie* case is infinitely less than what a directed verdict demands.").

Defendant concedes that plaintiff is a member of a protected class and that she was discharged from employment, but argues plaintiff cannot establish a prima facie case of discrimination because she is unable show

that similarly situated white employees were treated differently. In response, plaintiff refers to her deposition testimony, in which she alleges numerous instances where violations of company policy by non-minority workers resulted in no disciplinary measures being taken. Many of these instances, however, do not involve similarly situated employees, or violations of work rules of comparable seriousness. Moreover, much of plaintiff's testimony is unhelpful in that it is not based on personal knowledge. The court nevertheless finds that plaintiff has provided enough evidence to make a prima facie showing of discrimination under *McDonnell Douglas*.

■ At this point, defendant must provide evidence of a "legitimate, nondiscriminatory reason" for its conduct. In other words, defendant's burden is to establish facts from which the court may infer a proper reason behind defendant's decision to discharge plaintiff. Defendant contends that its explanation for discharging plaintiff, her repeated failure to follow accounting procedures, constitutes a legitimate, nondiscriminatory reason for its actions. To meet its burden at this point, defendant need not explain any differences in treatment between plaintiff and other employees. Defendant need only produce evidence which would allow a trier of fact to conclude the employment decision was based on nondiscriminatory reasons. *See Flasher*, 986 F.2d at 1318.

■ Defendant provides uncontroverted evidence that plaintiff violated its policies on handling money. The court finds that this explanation for discharging plaintiff constitutes a facially nondiscriminatory reason for its actions. Plaintiff's response that such violations did not rise to the level of a legitimate reason for termination is properly addressed at the next stage of the analysis. Accordingly, to survive summary judgment at this point, plaintiff must show there is a genuine dispute of material fact as to whether defendant's proffered reason for the challenged action is pretextual—i.e. unworthy of belief. *See Reynolds v. School District No. 1*, 69 F.3d 1523 (10th Cir.1995).

■ The Tenth Circuit has stated that "in a disparate treatment case, pretext may

be shown by reference to other similarly situated non-minority employees receiving disparate discipline." *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir.1995) (citing *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1261 (10th Cir.1988)). Under this analysis, the plaintiff must show that she was treated differently than other similarly situated employees who violated work rules of comparable seriousness. *Id.* at 529–30. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Wilson v. Utica Park Clinic, Inc.*, No. 95–5060, 76 F.3d 394, 1996 WL 50462 (10th Cir.1996) (unpublished) (citing *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531, 1547 (S.D.N.Y.1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987)). "The infractions giving rise to the comparison need not involve exactly the same offenses; they need only be of comparable seriousness." *Flasher*, 986 F.2d at 1312, 1316. "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997). *See David v. City and County of Denver*, 101 F.3d 1344, 1359–60 (10th Cir.1996) (discussing circumstances to be compared); *Flasher*, 986 F.2d at 1320 (same); *see also Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986 (10th Cir.1996) (rejecting plaintiff's evidence of differential treatment because the other employees were not similarly situated), *cert. denied sub nom, Doan v. Seagate Technology, Inc.*, —— U.S. ——, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997).

Plaintiff testifies that she was treated differently than her coworkers. She states that she was reprimanded and eventually terminated for behavior that, in many instances, was identical to that of similarly situated non-minority employees. Plaintiff testifies that these other employees failed to follow opening and closing procedures, took money from cash boxes to make change over weekends, and wrote deposit slips for funds that were not deposited until the following business day. Plaintiff also states that other employees are guilty of accepting checks from customers listed on the "bad check" bulletin, making false allegations against co-workers, placing IOUs in their cash boxes, taking financial advantage of mentally impaired customers, and writing checks drawn on accounts with insufficient funds. In all of these situations, plaintiff contends, defendant failed to reprimand the responsible non-minority employee.

Plaintiff argues that she has testified to "instance after instance" where white employees received no disciplinary measures for violating company procedures. Upon close examination, however, much of plaintiff's testimony appears deficient for several reasons. Many of the examples of disparate treatment plaintiff cites do not involve similarly situated employees or violations of work rules of comparable seriousness. Plaintiff also fails to establish that her supervisor had knowledge of many of the infractions for which she testifies the other employees did not receive discipline. Finally, plaintiff's knowledge regarding many of the events about which she testifies is based not on her personal experience, but rather on hearsay.

Plaintiff testifies that Craig Cole left personal checks and/or IOUs in the safe and removed money. Mr. Cole, however, is not a similarly situated employee. In fact, he is the general manager of TMTA. In that capacity, he would be Ms. Anson's supervisor and therefore not subject to the same standards governing performance evaluation and discipline as plaintiff.

Plaintiff's testimony that other employees are guilty of making false allegations against coworkers and taking financial advantage of mentally impaired customers is also unhelpful. Such conduct, though reprehensible if true, does not evidence the violations of work rules of comparative seriousness. Similarly, writing checks drawn on accounts with insufficient funds may be financially imprudent conduct for the check's issuer, but it does not evidence violation of defendant's policy.

Plaintiff also asserts that other customer service clerks took money home from their cash boxes but were not subject to discipline so doing. Plaintiff fails, however, to present

any evidence that her supervisor had knowledge of these infractions. This is apparent by her deposition statement that she did not know if management was aware that other clerks also withdrew money from their cash boxes.

Notwithstanding the evidentiary deficiencies of most of plaintiff's allegations, she does, however, present some evidence to substantiate her contentions that similarly situated white employees were not disciplined for violating work rules of comparable seriousness. For example, she testifies that none of the other clerks were disciplined for routinely accepting checks from customers listed on the "bad check" bulletin, which, the court agrees, would amount to a work rule violation of comparable seriousness. Plaintiff also testifies that other clerks were not disciplined for violating the opening and closing procedure by using the amount of one day's closing balance as the next day's opening balance without actually recounting the money. Although she does not expressly state that her supervisor was aware of this practice, all reasonable inferences must be drawn in favor of plaintiff, and it is not unreasonable to impute such knowledge to an immediate supervisor. Finally, plaintiff presents enough evidence to raise a material question regarding the similarity between the circumstances surrounding numerous late bank deposits for which, it appears, only she was disciplined.

The court finds that plaintiff has pleaded a prima facie case and has presented evidence that defendant's articulated non-discriminatory reason may be pretext. The court also finds that the record contains sufficient evidence for a reasonable jury to believe that the proffered reason is a pretext for race discrimination. Accordingly, the court will deny defendant's motion for summary judgment on plaintiff's discriminatory discharge claim under Title VII and § 1981, and the KAAD.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Summary Judgment (Doc. 64) is denied.